## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**ROBERT H. JORDAN,**

**Plaintiff,**

**v.**                                                    **Case No. 23-CV-1135**

**CHERIE BARRETT,** *et. al.,*

**Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

Plaintiff Robert H. Jordan, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 1.) Jordan was allowed to proceed on a First Amendment retaliation claim against the defendants. (Docket # 13.) The defendants moved for summary judgment on the grounds that Jordan failed to exhaust his administrative remedies as to this claim. (Docket # 19.) That motion is fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment on exhaustion grounds and dismisses the case without prejudice.

## FACTS

After he was injured while working at Columbia Correctional Institution ("Columbia") as kitchen staff, Jordan alleges that the defendants retaliated against him for filing a lawsuit about the injury. (Docket # 1, ¶¶ 18–23.) He states the defendants denied him medical care; wrongfully terminated him from his job; lied about whether Jordan had purchased items he claimed as missing after he transferred institutions; cited him wrongfully for misusing his tablet; and threw away his TV. (*Id.*)

The defendants identify eight inmate complaints that concern the substance of these allegations, and Jordan identifies one inmate complaint. After reviewing all nine inmate complaints, it is apparent that only four potentially demonstrate that Jordan exhausted his administrative remedies as to his retaliation claim: CCI-2021-11626; CCI-2021-13369; NLCI-2021-17753; and NLCI-2022-2949. The remaining five, while mentioning lack of medical care or complaining about missing property, do not in any way suggest that these actions were taken in retaliation and/or are related to the defendants' actions. Additionally, it is undisputed that these inmate complaints were not fully exhausted using the prescribed process. As such, the court's analysis will focus on the above-identified four inmate complaints.

In inmate complaint CCI-2021-11626, Jordan asserted that in March 2021 he was "unlawfully moved to a lower pay rate position" and sought compensation for the loss of wages. (Docket # 21-3 at 8.) He identified the cause of the issue as his injury and the fact that the Health Services Unit ("HSU") would not clear him for work. (*Id.*) The inmate complaint was signed and dated August 1, 2021. (*Id.*) The institution complaint examiner's office received it on August 3, 2021. (*Id.* at 2.) The institution complaint examiner ("ICE") rejected the inmate complaint as untimely pursuant to Wis. Admin. Code § DOC 310.10(6)(e), because it concerned an incident that happened back in March 2021. (*Id.*) On August 3, 2021, Jordan appealed the rejection, which was received by the reviewing authority on August 5, 2021. (*Id.* at 27.) In his appeal, Jordan argued that he had been informally trying to get the issue resolved, which is why he did not file an inmate complaint until August. (*Id.*) The reviewing authority upheld the rejection. (*Id.* at 6.)

In CCI-2021-13369, Jordan complained about being wrongfully terminated from his work assignment when he should have been placed on medical leave. (Docket # 21-4 at 18.) He also stated that he was being forced to sign termination papers. (*Id.*) The ICE investigated the complaint and determined that Jordan was actually placed on a medical no work restriction, and that is why he was removed from his job. (*Id.* at 2.) Additionally, the ICE found that Jordan received clear correspondence from the business office about his employment status. (*Id.*) As such, the ICE recommended dismissal of the inmate complaint. (*Id.*) The reviewing authority agreed with the ICE's recommendation and dismissed the complaint. (*Id.* at 4–5.) Jordan appealed the dismissal, taking issue with the fact that he was simultaneously unassigned to a job but was also on medical leave. (*Id.* at 32.) The Corrections Complaint Examiner ("CCE") recommended that the inmate complaint be returned to the ICE for further investigation on how Jordan was placed on medical leave and then subsequently terminated. (Docket # 21-4 at 6.) The Office of the Secretary agreed with the CCE's determination, and the ICE was directed to conduct a "prioritized investigation." (*Id.* at 7.) After further investigation, the ICE recommended dismissal because the Food Services department needed to "medically terminate" Jordan's employment while he was on medical leave so they could fill the position to have adequate staffing. (*Id.* at 8.) The reviewing authority agreed with the ICE's finding and dismissed the complaint. (*Id.* at 9-10.) Jordan again appealed the dismissal, and the CCE recommended that the dismissal be upheld because the termination was properly made pursuant to DAI policy. (*Id.* at 11.) The Office of Secretary agreed with the CCE's recommendation and upheld the dismissal. (*Id.* at 12.) Jordan states that the inmate complaint clearly shows he

"was discriminated against and terminated due to a Staff related work injury," which demonstrates retaliation. (Docket # 34, ¶ 6.)

In NLCI-2021-17753, Jordan stated that an officer tampered with his tablet and he believed "that I'm being retaliated against for an incident that happened at CCI where I was injured by staff, and someone found out that I'm filing a lawsuit." (Docket # 21-7 at 6.) Jordan signed the inmate complaint on November 19, 2021, and it was received by the ICE on November 22, 2021. (*Id.*) It is undisputed that the date of the incident was October 12, 2021. (*Id.*) The ICE rejected the complaint as untimely because it was filed more than 14 days after the incident allegedly occurred. (*Id.* at 2–3.) Jordan did not appeal the rejection. Jordan states that he "was told to wait to file a grievance so that the institution can do an investigation, and that made the complaint untimely." (Docket # 34, ¶ 12.) He also states that he was directed to wait to file a grievance until he received a new tablet. (Docket # 28, ¶ 18.) However, neither of these reasons for untimeliness were included in his grievance.

In NLCI-2022-2924, Jordan complained that staff tampered with his legal mail and violated his right to privacy. (Docket # 46-1 at 8.) Jordan signed the complaint on February 12, 2022, and it was received by the ICE on February 16, 2022. (*Id.*) The date of the incident was January 22, 2022. (*Id.*) The ICE rejected the inmate complaint as untimely because it was filed more than 14 days after the alleged incident. (*Id.* at 2.) Jordan appealed the rejection, stating that the reason the inmate complaint was filed late was because he was instructed to informally resolve the issue. (*Id.* at 17.) The reviewing authority upheld the rejection because the appeal was also untimely. (*Id.* at 6.) Jordan asserts that this inmate complaint is relevant to his First Amendment claim but does not explain how. (Docket # 34, ¶ 14.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*1. Applicable Law and Procedure on Exhaustion*

This case is governed by the Prison Litigation Reform Act ("PLRA"). The PLRA states in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018).

6

For the Department of Corrections Institutions, "[a]n inmate may use the Inmate Complaint Review System (ICRS) to raise issues regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1). A prisoner must "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code § DOC 310.07(2). A complaint "may contain only one clearly identified issue." Wis. Admin. Code § DOC 310.07(5).

The ICE then may accept the complaint and make a recommendation or reject the complaint for one of the ten reasons listed in § DOC 310.10(6) within 30 days from the date of receipt, including inmate complaints filed after the 14-day deadline without good cause. Wis. Admin. Code § DOC 310.10 (2), (9). If the ICE rejects the complaint, an inmate may appeal the rejection within 10 days to the appropriate reviewing authority "who shall only review the basis for the rejection of the complaint." Wis. Admin. Code § DOC 310.10(10). The ICE may also return a defective complaint and allow an inmate to correct the defects and resubmit within 10 days. Wis. Admin. Code § DOC 310.10(5).

When the ICE makes a recommendation, the reviewing authority shall make a decision within 15 days. Wis. Admin. Code § DOC 310.11(1). If an inmate does not receive a decision within 45 days after the date of acknowledgement by the ICE, he may directly appeal to the Corrections Complaint Examiner ("CCE"). Wis. Admin. Code § DOC 310.11(3). Otherwise, an inmate may appeal a reviewing authority's decision to the CCE within 14 days after the date of the decision. Wis. Admin. Code § DOC 310.12(1). The CCE then "shall recommend that the reviewing authority decision be affirmed or dismissed, in whole or in part, and send its recommendation to the secretary [of the DOC] within 45 days of receipt of the appeal." Wis. Admin. Code § DOC 310.12(9). The secretary shall

7

make a decision within 45 days following the receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). "If the inmate does not receive the secretary's written decision within 90 days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted." Wis. Admin. Code § DOC 310.13(4).

### 2.    Application to this Case

It is undisputed that of the four relevant inmate complaints, Jordan only brought one fully through the grievance process—CCI-2021-13369. The other three were rejected for untimeliness. "[A] complaint that is *rejected* for procedural reasons, rather than *dismissed* after a determination on the merits, does not exhaust a prisoner's administrative remedies." *Henderson v. Aldana*, Case No. 20-CV-555-JPS, 2023 WL 4868568 at *5 (E.D. Wis. July 31, 2023) (emphasis in original) (citations omitted). For all three rejected inmate complaints, Jordan argues that he had good reasons as to why they were late. The exhaustion regulations give the DOC discretion to determine whether a prisoner had good cause for filing a late inmate complaint. Wis. Admin. Code § 310.07(2). "Thus, the place for making arguments about 'good cause' is to the institution, not [the court]." *Jones v. Nelson*, Case No. 15-cv-831-bbc, 2018 WL 1953907 at *1 (W.D. Wis. April 25, 2018). "The failure to reasonably apprise the institution complaint examiner, by means of the complaint itself, of the facts the inmate believes constitutes 'good cause' waives the inmate's right to later complain his or her complaint should have been accepted late for 'good cause.'" *Id.*, (quoting *State ex rel. Laurich v. Litscher*, 2004 WI App 150, ¶ 15, 275 Wis. 2d 769, 778, 686 N.W.2d 668, 672).

Jordan failed to appeal the rejection of NCLI-2021-17753, and he did not, in the

body of the inmate complaint, explain why he was filing it late. Thus, this inmate complaint does not demonstrate Jordan exhausted his administrative remedies. *See id.* at *2 (finding that failing to appeal a rejected complaint is a basis in and of itself to determine that a prisoner did not exhaust his administrative remedies).

Jordan did appeal the rejection of the other two inmate complaints, and in those appeals, he explained why his inmate complaint was filed late. However, the reviewing authority did not find that Jordan demonstrated "good cause" and upheld the rejections. Courts "must give deference to prison officials regarding interpretation and application of their own grievance procedures so long as the procedures provide inmates with reasonable opportunities to present grievances." *Jones v. Frank*, Case No. 07-CV-141-BBC, 2008 WL 4190322 at * 3 (W.D. Wis. April 14, 2008). There is no evidence here that the reviewing authority's determination was clearly erroneous, arbitrary, or intended to prevent Jordan from using the grievance process. The other two rejected inmate complaints do not demonstrate that Jordan exhausted his administrative remedies.

As for CCI-2021-13369, while this inmate complaint went fully through the grievance process, it does not put the institution on notice that Jordan was complaining about retaliation. "If an inmate complaint 'concerns alleged retaliation, then at a minimum it must identify two things: the protected conduct that *provoked* the retaliation and the retaliatory act.'" *Tate v. Litscher*, Case No. 16-CV-1503, 2018 WL 2100304, at *4 (E.D. Wis. May 5, 2018) (emphasis in original) (citations omitted). This does not mean a prisoner must "allege a specific theory in his inmate complaint"; but he does need to "provide enough detail in his 'grievance to put the prison and individual officials on notice.'" *Id.* (quoting *Bock*, 549 U.S. at 205). Jordan's inmate complaint questions his wrongful termination from

9

his kitchen job, but it does not state that he believed he was terminated because of his lawsuit. It does not even generally state that he believes he was terminated in retaliation. As such, the inmate complaint does not demonstrate Jordan exhausted his administrative remedies.

Because none of the relevant inmate complaints establish that Jordan exhausted his administrative remedies as to his First Amendment retaliation claims, summary judgment is granted in favor of the defendants.

## CONCLUSION

For the reasons stated above, Jordan failed to demonstrate that he exhausted his administrative remedies. Summary judgment is granted in favor of the defendants, and Jordan's case is dismissed without prejudice. *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

10

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 29th day of August, 2024.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

Case 2:23-cv-01135-NJ    Filed 08/29/24    Page 11 of 11    Document 47